## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **HOBBY LOBBY STORES, INC. d/b/a HOBBY LOBBY, and AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, as subrogee of Hobby Lobby Stores, Inc.,** | |
| **Plaintiffs,** | |
| **v.** | **1:11-cv-2566-WSD** |
| **WOODALL ROOFING COMPANY, INC. and DO IT ALL INVESTMENT GROUP, INC.,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Essex Insurance Company's ("Essex")

Motion for Stay and Injunction of this Action [19], Essex's Motion to Intervene for

the Limited Purpose of Seeking a Stay Pending the Outcome of a Declaratory

Judgment Action [20], Woodall Roofing Company, Inc.'s ("Woodall") Motion to

Stay [22], Hobby Lobby Stores, Inc. ("Hobby Lobby") and American Guarantee &

Liability Insurance Company's ("AGLIC," collectively "Plaintiffs") "Motion for

Judgment on the Pleadings and/or Partial Summary Judgment Imposing Vicarious

Liability on Woodall Roofing Co. for the Wrongful Acts of Do It All Investment Pursuant to OCGA § 51-2-5(4)" ("Motion for Partial Summary Judgment") [25], and Woodall's "Motion to Refuse Plaintiff's Application for Judgment Pursuant to Rule 56(f)" ("Motion to Deny or Defer Judgment on Plaintiffs' Motion for Partial Summary Judgment Pursuant to Rule 56(d)") [39].

## I.    BACKGROUND

### A.    The Parties

Hobby Lobby is a retail business that sells merchandise, including arts and crafts supplies, fabrics, hobby items, and frames.  (Third Am. Compl. ¶¶ 3-4). Hobby Lobby, at all relevant times in this action, operated a retail store in the Market Square Shopping Center in Cartersville, Georgia.  (Id. ¶ 4).

Malon D. Mimms Company ("Mimms") is the owner, developer, and manager of the Market Square Shopping Center in Cartersville, Georgia.  (Id. ¶ 11).  Hobby Lobby is a tenant and occupant of a building owned and operated by Mimms.  (Pls.' Statement of Material Facts Which Plaintiffs Contend There is No Genuine Issue to be Tried ("PSMF") ¶¶ 1-2).

AGLIC, a New York insurance company, issued a property insurance policy insuring Hobby Lobby's store and merchandise at the Market Square Shopping

Center in Cartersville, Georgia. (Third Am. Compl. ¶ 6).[1]

Woodall is a Georgia roofing company in the business of selling, designing, installing, repairing, and constructing roof systems for commercial buildings. (Id. ¶¶ 7-8).

Do It All Investment Group, Inc. ("DIA") is a Georgia roofing company also in the business of selling, designing, installing, repairing, and constructing roof systems for commercial buildings. (Id. ¶¶ 9-10).

Essex is an insurance company that issued a general liability insurance policy to DIA (the "Liability Policy"). (Essex's Mot. for Stay and Injunction at 1-2). Essex is a party in two declaratory judgment actions to determine the scope of its duties under the Liability Policy to defend or indemnify DIA and Woodall as a result of the events that are the basis of this action. (Id.).

B.     Background Facts[2]

In April 2010, Mimms contracted with Woodall to install a new membrane roof over the space leased to Hobby Lobby in the Market Square Shopping Center.

---

[1] It asserts claims in this action as subrogee under the policy it issued to Hobby Lobby.

[2] Woodall submitted a response to Plaintiffs' Statement of Material Facts [38]. Although Woodall admits that most of Plaintiffs' facts are true, it has not properly disputed facts 17, 33, and 35 because it has not cited to specific evidence in the record, stated a valid objection, or otherwise pointed out that Plaintiffs' evidence does not support its facts. L.R. 56.1 B.(2), N.D. Ga. Because Woodall failed properly to dispute these facts, they are deemed admitted. Id.

(PSMF ¶ 3). Woodall subcontracted with DIA under a subcontractor agreement to perform the roofing work (the "Subcontractor Agreement"). (Id. ¶ 4; Ex. A to Ex. 1 to Woodall's Mot. to Stay). The roofing work was required to be performed in accordance with the Georgia state minimum standard codes, which include the 2006 International Building and Plumbing Codes, and which also are incorporated as part of the Bartow County Building Code Ordinances. (PSMF ¶¶ 17-30).

On July 18, 2010, a portion of the new roof that was installed by Woodall and DIA over Hobby Lobby's premises collapsed following a heavy rainstorm, damaging the premises and Hobby Lobby's property and inventory in it. (Id. ¶ 5). Hobby Lobby asserted claims for the loss it suffered.

Woodall admits that DIA "had a legal obligation to comply with the building codes of Bartow County" and that DIA "breached its duty of care by engaging in careless and negligent conduct" by:

> (a) Installing improperly sized drain inserts inside the existing roof drains, which thereby reduced the size of the drains and the drain capacity of the roof drainage system well below the requirements specified by the applicable building codes, plumbing codes, and local ordinances;

> (b) Covering two existing roof drains with the new roofing membrane, which further reduced the drain capacity of the roof drainage system in violation of the requirements specified by the applicable building codes, plumbing codes, and local ordinances;

(c) Improperly installing "crickets," which, in this case, had the effect of closing off two existing 6-inch diameter drains, which further reduced the drain capacity of the roof drainage system;

(d) Failing to provide adequate secondary/overflow drainage and/or additional structural support for the roof after reducing the size of the existing roof drains and the area available for drainage;

(e) Failing to comply with the applicable codes, ordinances, and standards governing the roofing work and the required drain capacity for the roof; [and,]

(f) Failing to properly and adequately inspect its roofing work to ensure that it had been performed in accordance with the applicable codes, ordinances, standards, and practices of good workmanship[.]

(Woodall's Answer to Third Am. Compl. ¶¶ 27, 44; Pls.' Third Am. Compl. ¶¶ 27, 44).[3]  Woodall also admits that "Do It All failed to properly install the roof and that such failure was the cause of the roof collapse on July 18, 2010."  (PSMF ¶¶ 6-12).  Woodall's admissions are supported by the independent and undisputed findings and conclusions of a report on the roof collapse that was prepared by a professional engineer hired by Plaintiffs.  (Id. ¶¶ 13-16, 31-38).  Thus, there is no dispute that DIA's negligence was responsible for the roof collapse and associated

---

[3] The Court notes that Plaintiffs' Statement of Material Facts regarding admissions by Woodall, which are not disputed by Woodall, is based on Woodall's responses to the Second Amended Complaint.  A Third Amended Complaint has since been filed that added a claim of vicarious liability against Woodall under O.C.G.A. § 51-2-5(6), which has been answered [54, 56].  Woodall's Answer to the Third Amended Complaint does not differ from its Answer to the Second Amended Complaint and contains the same admissions asserted in Plaintiffs' Statement of Material Facts.  (Woodall's Answer to Third Am. Compl. ¶¶ 28-31, 33, 39-41, 44-45).

damage to Hobby Lobby's property and inventory and there is no dispute that the collapse was caused by DIA's failure to comply with the state building codes and the Bartow County Building Code Ordinances which incorporated them.

C.    Procedural History

On August 4, 2011, Plaintiffs initiated this action by filing their Complaint, which they amended on August 12, 2011 [1, 2].  In it, Plaintiffs seek to be reimbursed for the losses Hobby Lobby suffered as a result of the roof collapse.

On August 26, 2011, Woodall filed its answer to Plaintiffs' Amended Complaint and asserted cross claims against DIA [7].  Woodall's cross claims assert that DIA is required to indemnify it, pursuant to the terms of the Subcontractor Agreement, for "claims, loss, liability or expense arising out of" DIA's activities as a subcontractor performing roof work which resulted in any loss to Woodall.  (Woodall's Answer, Additional Defenses & Cross Claims Against Do It All Investment Group Inc. at 26).

On August 31, 2011, the parties filed their consent motion for leave to file a Second Amended Complaint, which was approved by the Court on September 1, 2011 [10, 12].

On September 30, 2011, Essex filed its Motion to Intervene for the Limited Purpose of Seeking a Stay Pending the Outcome of a Declaratory Judgment Action

and Motion for Stay and Injunction of this Action.  The declaratory judgment action that is the basis of Essex's stay motion is styled <u>Essex Insurance Company v. Do It All Investment Group, Inc., et al.</u>, Civil Action No. 1:11-CV-3120-JOF, (the "Declaratory Judgment Action").  It was filed on September 14, 2011, was assigned to Judge Forrester in our Court, and Judge Forrester entered an order resolving the claims in the Declaratory Judgment Action on September 21, 2012.

In the Declaratory Judgment Action, Essex sought a determination that the Liability Policy it issued to DIA does not provide coverage for Plaintiffs' claims in this action, specifically that "neither Do It All nor Woodall is entitled to coverage for Plaintiffs' claims."  (Essex's Reply Br. in Supp. of its Mot. to Stay at 4-5).  Essex seeks a stay of this action on the grounds that it will be prejudiced if this case proceeds until the coverage issue in the Declaratory Judgment Action is resolved, which has since occurred.  (<u>Id.</u>).

On October 7, 2011, Woodall filed its Motion to Stay pending resolution of the Declaratory Judgment Action in this Court and the declaratory judgment action in the Superior Court of Gwinnett County, Case No. 11A 10058-4, (the "Gwinnett County Action") in which Woodall is litigating Essex's duty to defend and

indemnify DIA and Woodall for the claims asserted against them in this action. (Woodall's Br. in Supp. of its Mot. to Stay at 6-9).[4]

On October 12, 2011, Plaintiffs filed their Motion for Partial Summary Judgment seeking judgment on the pleadings or, alternatively, partial summary judgment[5] on the limited issue of whether "Woodall Roofing Co., is vicariously liable for the wrongful acts of its subcontractor, Do It All Investment Group, pursuant to O.C.G.A. § 51-2-5(4)." (Pl.'s Mot. for J. on the Pleadings and/or Partial Summ. J. at 1).

On November 4, 2011, Woodall filed its Motion to Deny or Defer Judgment on Plaintiffs' Motion for Partial Summary Judgment Pursuant to Rule 56(d). Even though Woodall substantively responded to Plaintiffs' Motion for Partial Summary Judgment that same day, Woodall asserts that granting partial summary judgment is inappropriate because discovery had not concluded at the time the motion was filed and Woodall was unable to adequately respond to Plaintiffs' motion.

---

[4] Although it is not clear based on publically available information, it appears the Gwinnett County Action has been stayed and administratively closed. See http://www.gwinnettcourts.com/ (search by Case Number using 11-A-10058; then click Search; then select "Woodall Roofing Company Vs Essex Insurance Co Et Al") (last visited Sept. 13, 2012).

[5] Plaintiffs rely upon the affidavit of a professional engineer to support their motion. Because Plaintiffs rely on extrinsic evidence, the Court considers their motion as one seeking partial summary judgment.

(Woodall's Motion to Deny or Defer Judgment on Plaintiffs' Motion for Partial

Summary Judgment Pursuant to Rule 56(d) at 2).

On December 1, 2011, Plaintiffs filed their Motion for Leave to File a Third

Amended Complaint to add a vicarious liability claim against Woodall under

O.C.G.A. § 51-2-5(6) [47]. The motion was granted on January 9, 2012 [53].

On February 23, 2012, discovery closed. Further dispositive motions have

not been filed.

## II. DISCUSSION

### A. Essex and Woodall's Motions to Stay

A district court has, incident to its power to control its own docket, broad

discretion to stay proceedings. Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 21 (1983) (citing Landis v. North American Co., 299 U.S. 248,

254-255 (1936)).[6] The Court's authority to stay is "incidental to the power

inherent in every court to control the disposition of the causes on its docket with

economy of time and effort for itself, for counsel, and for litigants." Landis v. N.

Am. Co., 299 U.S. 248, 254 (1936). To determine if a stay is appropriate, "[t]he

_____

[6] The Court has considered and rejects Essex's unsupported argument that the decision to grant a stay of an action is a matter of substantive law such that Georgia law regarding resolving coverage disputes before determining liability requires a stay in this action. See Markel Int'l Ins. Co. v. O'Quinn, 566 F. Supp. 2d 1374, 1378 n.4 (S.D. Ga. 2008); (Essex's Reply Br. in Supp. of its Mot. to Stay at 5-6).

interests of all the parties and the interests of the court in an orderly disposition of its caseload must be considered." Home Ins. Co. v. Coastal Lumber Co., 575 F. Supp. 1081, 1083 (N.D. Ga. 1983). A court should consider "the possible damage, hardship and inequities to either of the parties resulting from grant or denial of the stay and the value of the stay to accomplishment of the objectives of the judicial process from the standpoint of simplification of the issues in question and the trial of the case." Choat v. Rome Indus., Inc., 480 F. Supp. 387, 391 (N.D. Ga. 1979); see also Landis, 299 U.S. at 255 (noting the party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else").

Essex and Woodall's interests in determining which insurance companies and which parties are liable for any award of damages that might be awarded does not outweigh Plaintiffs' interest in litigating its claims in an efficient and timely manner. The Court notes that this litigation has proceeded without resolution for more than two years since the roof collapse. The collateral issues regarding the liability of the respective insurers for any eventual award of damages will be determined in this and the other pending proceedings. These issues do not prevent this Court from resolving Plaintiffs' negligence and breach of contract claims and

specifically are not a reasonable or practical basis for the Court not considering whether Woodall is vicariously liable for DIA's negligent work on the roof. The fact is discovery is completed in this action, the Declaratory Judgment Action has been decided, and there are matters that are ripe for a prompt decision. There is no need for, and the interests of the Court and Plaintiffs are not served by, a stay. Woodall and Essex's requests for a stay are denied.[7]

### B. Woodall's Motion to Deny or Defer Judgment on Plaintiffs' Motion for Partial Summary Judgment Pursuant to Rule 56(d)

When Woodall's Motion to Deny or Defer Judgment on Plaintiffs' Motion for Partial Summary Judgment Pursuant to Rule 56(d) was filed, discovery had not concluded. Woodall asserts that because discovery was still ongoing, Plaintiffs' motion should be denied until Woodall had the opportunity to fully develop the record on issues it did not specify.

"The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." Jones v. City of Columbus, Ga., 120 F.3d 248, 253 (11th Cir. 1997). In Snook v. Trust Co. of Ga. Bank of Savannah, N.A., the Eleventh Circuit stated:

---

[7] Because Essex only sought to intervene for the purposes of requesting a stay, Essex's Motion to Intervene for the Limited Purpose of Seeking a Stay Pending the Outcome of a Declaratory Judgment Action is granted.

> The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits . . . . If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials . . . .

859 F.2d 865, 870 (11th Cir. 1988) (citations omitted). "A Rule 56[(d)] motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1280 (11th Cir. 1998). An affidavit of this kind and content is necessary to ensure speculative discovery issues do not prevent the consideration of motions for summary judgment. See id.; see also McGoy v. Ray, 164 F. App'x 876, 877-78 (11th Cir. 2006) (quoting Barfield v. Brierton, 883 F.2d 923, 931 (11th Cir. 1989)) ("The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but must show the court how the stay will operate to permit him to rebut, through discovery, the movant's contentions.").

Here, Woodall generally and vaguely claims it has not had the opportunity to conduct the discovery it asserts it needed to respond adequately to Plaintiffs'

Motion for Partial Summary Judgment. Woodall did not specify how a stay will permit it to rebut Plaintiffs' facts and it has not provided an affidavit explaining what it "expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." See Harbert, 157 F.3d at 1280. Instead, in its two-page pleading, unsupported by any case citations, Woodall generally references Hobby Lobby's use of an expert report and exhibits to support its Motion for Partial Summary Judgment as its reason for the Court to deny the motion.[8] This is an insufficient reason to deny the motion and is not a substitute for the affidavit required by Rule 56(d). This conclusion is compelled here where Woodall, in its response, does not dispute the facts upon which Plaintiffs seek partial summary judgment. Woodall has failed to present the facts it "expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment," and Woodall's request for relief under Rule 56(d) is required to be denied. See id.[9]

---

[8] The Court notes that Woodall did not file a reply brief on its Motion to Deny or Defer Judgment on Plaintiffs' Motion for Partial Summary Judgment Pursuant to Rule 56(d).

[9] The Court further notes that after discovery concluded Woodall did not request to file any supplemental materials or to call any additional evidence to the Court's attention.

C.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiff seeks judgment on the pleadings or, alternatively, partial summary judgment on the issue whether "Woodall Roofing Co., is vicariously liable for the wrongful acts of its subcontractor, Do It All Investment Group, pursuant to O.C.G.A. § 51-2-5(4)." (Pl.'s Mot. for J. on the Pleadings and/or Partial Summ. J. at 1).

1.    *Summary Judgment Standard*

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate

by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## 2. Liability under O.C.G.A. § 51-2-5(4)

An employer generally is not liable for the torts of an independent contractor[10] where the employer has relinquished control over the manner in which the work is to be performed. See Orton v. Masquerade, Inc., 716 S.E.2d 764, 766 (Ga. Ct. App. 2011); McKee Foods Corp. v. Lawrence, 712 S.E.2d 79, 81 (Ga. Ct. App. 2011); Yancey v. Watkins, 708 S.E.2d 539, 542-43 (Ga. Ct. App. 2011). "O.C.G.A. § 51-2-5(4) provides [however] that '[a]n employer is liable for the negligence of a contractor . . . [i]f the wrongful act is the violation of a duty imposed by statute.'" Boyd v. Packaging Corp. of Am., 664 S.E.2d 277, 279 (Ga. Ct. App. 2008) (quoting O.C.G.A. § 51-2-5(4)). Under "O.C.G.A. § 51-2-5(4), an employer is liable for the negligence of an independent contractor who is performing the employer's nondelegable statutory duty." Perry v. Soil Remediation, Inc., 471 S.E.2d 320, 322 (Ga. Ct. App. 1996); see Benson-Jones v. Sysco Food Servs. of Atlanta, LLC, 651 S.E.2d 839, 844 (Ga. Ct. App. 2007)

---

[10] Although the Subcontractor Agreement indicates that DIA was an employee-subcontractor of Woodall, Woodall asserts that DIA was employed as an independent contractor, denies it controlled the manner in which the roofing work would be performed, and argues this relieves it of liability pursuant O.C.G.A. § 51-2-5(4). (See Woodall's Resp. to Pls.' Mot. for Partial Summ. J. at 4-6; Woodall's Answer to Third Am. Compl. at 5-8; Ex. A to Ex. 1 to Woodall's Mot. to Stay). Taking the evidence in the light most favorable to Woodall, the Court will consider it to be an independent contractor for the purposes of Plaintiffs' Motion for Partial Summary Judgment.

(employer is liable for the actions of an independent contractor it employs where that independent contractor breaches a nondelegable statutory duty of the employer); Kroger Co. v. Strickland, 548 S.E.2d 375, 377-78 (Ga. Ct. App. 2001) ("[U]nder O.C.G.A. § 51-2-5(4), one who employs an independent contractor is liable for the acts and omissions of such independent contractor when the duty is imposed by statute.").[11]

Statutes and ordinances that create duties for employers or property owners that protect the public interest, health, safety, and well-being of citizens are nondelegable, and cannot be avoided by contracting these duties away to an independent contractor. See Perry, 471 S.E.2d at 322; Owens v. BarclaysAmerican/Mortg. Corp., 460 S.E.2d 835, 837-38 (Ga. Ct. App. 1995); Royal Frozen Foods Co. v. Garrett, 167 S.E.2d 400, 402 (Ga. Ct. App. 1969), rev'd on other grounds, 170 S.E.2d 294 (Ga. 1969); Pressley v. Wilson, 156 S.E.2d 399, 400-01 (Ga. Ct. App. 1967). An employer is vicariously liable for the negligence

---

[11] The cases relied on by Woodall in its response do not apply to O.C.G.A. § 51-2-5(4), but address an employer's vicarious liability under O.C.G.A. § 51-2-5(3) based on premises liability and express contractual duty provisions. See Perdue v. Atlanta Bldg. Maint. Co., Inc., 714 S.E.2d 611, 613 (Ga. Ct. App. 2011); Maddox v. Cumberland Distrib. Servs. of Ga., Inc., 511 S.E.2d 270, 271 (Ga. Ct. App. 1999). The Court also notes that other cases cited by Woodall for the proposition that building codes do not create a statutory duty, address the public duty doctrine involving duties owed to individuals by governmental entities. Clive v. Gregory, 635 S.E.2d 188, 192-93 (Ga. Ct. App. 2006); City of Lawrenceville v. Macko, 439 S.E.2d 95, 99 (Ga. Ct. App. 1993), overruled by id.

of an independent contractor if the independent contractor performs the employer's nondelegable statutory duty. See, e.g., Perry, 471 S.E.2d at 322-23. The employer is vicariously liable irrespective of the employer's knowledge of the independent contractor's violation of that duty or the employer's own negligence. See Atkins v. MRP Park Lake, L.P., 687 S.E.2d 215, 218 (Ga. Ct. App. 2009).

In short, a person is liable for the negligence of an independent contractor performing a nondelegable duty even if the independent contractor's negligence is unknown. The question here is whether O.C.G.A. § 51-2-5(4) results in Woodall being liable for DIA's negligence even if Woodall was unaware of it. The issue centers on whether DIA was performing Woodall's nondelegable duty in repairing the roof above Hobby Lobby's premises.

3. *Whether the Georgia state minimum codes and Bartow County Building Code Ordinances establish nondelegable duties for Woodall*

"A legal duty sufficient to support liability in negligence is 'either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts.' Whether a legal duty exists is a question of law for the court." Rasnick v. Krishna Hospitality, Inc., 690 S.E.2d 670, 673 (Ga. Ct. App. 2010)

(quoting First Fed. Sav. Bank of Brunswick v. Fretthold, 394 S.E.2d 128, 130 (Ga. Ct. App. 1990)).

Here, O.C.G.A. §§ 8-2-20, 8-2-25, and 8-2-28 impose a statutory duty on entities involved in the building and repair of structures to comply with the state minimum standard codes established under Georgia's Uniform Codes Act. See O.C.G.A. §§ 8-2-20 to 8-2-31; 3 Ga. Jur. Property § 25:108. These state minimum standard codes include codes established by the International Building and Plumbing Codes. O.C.G.A. § 8-2-20(9)(B)(i). The legislative intent for having minimum standard codes and the licensing of contractors in Georgia is to protect "homeowners, other property owners, tenants, and the general public against faulty, inadequate, inefficient, or unsafe . . . plumbing [and] utility contracting." See O.C.G.A. § 43-14-1; Waller v. State Constr. Indus. Licensing Bd., 299 S.E.2d 554, 555-56 (Ga. 1983).

These state minimum codes also were adopted in Bartow County, where Hobby Lobby is located, as Section 18-31 of the Bartow County Building Code Ordinance. (PSMF ¶¶ 20, 27).[12] Like the state minimum standard codes, an

_____

[12] A duty imposed by an ordinance adopted by a municipality has the same force of law as a duty imposed by a statute enacted by the Georgia legislature. See John P. King Mfg. Co. v. City Council of Augusta, 277 U.S. 100, 111 (1928) (quoting Atl. Coast Line. R.R. Co. v. Goldsboro, 232 U.S. 548, 555 (1914)) ("A municipal by-law or ordinance . . . is a state law within the meaning of the Federal

express purpose of the Bartow County Building Code Ordinances is to "[p]rotect the public health, safety, and welfare by ensuring that existing repairs and renovation of existing buildings are constructed according to the Standard Building Codes and in a safe and sound manner, so as not to pose a hazard to the occupants or other structures or persons." (Affidavit of Phillip A. Craig, P.E. ¶ 15 (quoting Bartow County Building Code Ordinance § 18-22(2)).

The Georgia statutes establishing state minimum standard codes, and the Bartow County Building Code Ordinances adopting them, are laws establishing duties that are intended to protect property owners, tenants, and the public. Because these state statutes are directed at ensuring these important core public protections, they constitute nondelegable statutory duties that may not be assigned by contract to an independent contractor or subcontractor. See, e.g., O.C.G.A. §§ 8-2-20 to 8-2-31, 43-14-1; Waller, 299 S.E.2d at 555-56; Perry, 471 S.E.2d at 322-23; Owens, 460 S.E.2d at 837-38; (Affidavit of Phillip A. Craig, P.E. ¶ 15 (quoting Bartow County Building Code Ordinance § 18-22(2)).

---

Constitution."); Jenkins v. Jones, 75 S.E.2d 815, 819 (Ga. 1953) ("Generally, a municipal ordinance passed in pursuance of express legislative authority is a law within the meaning of the Constitution, and has the same effect as a local law duly enacted by the State legislature."); Wilson v. Ga. Power & Light Co., 36 S.E.2d 757, 757-58 (Ga. 1946) ("a municipal ordinance has the force of law within the corporate limits of the municipality").

Here, in contracting to perform the work on the Hobby Lobby roof, Woodall assumed a nondelegable statutory duty to ensure that the work to repair the roof complied with the building, construction, and plumbing codes established pursuant to Georgia statutes and the Bartow County Code Ordinances, specifically the International Building and Plumbing Codes. Woodall owed this nondelegable duty to Mimms and Hobby Lobby, as a building tenant, and to the public generally who could be, and were in this case, harmed by a failure to adhere to these state minimum standard codes. The remaining issue regarding whether Woodall is vicariously liable to Plaintiffs for the roof collapse is whether there is a genuine dispute of fact regarding DIA's negligence.

> 4. *Whether Woodall is vicariously liable for DIA's negligence based on its judicial admissions that DIA was negligent*

Woodall admitted in this litigation that it employed DIA to perform the work on the roof; that DIA violated the state minimum codes and Bartow County Building Code Ordinances, specifically the International Building and Plumbing Codes; that the roof work was negligently performed by DIA; and that DIA's negligence caused the roof to collapse. (Woodall's Answers ¶¶ 27-31, 33, 39-41, 44(a)-(e)).

The Eleventh Circuit recently restated the general rule regarding judicial admissions:

It is . . . worth noting that 'a party is bound by the admissions in
his pleadings.' '[J]udicial admissions are proof possessing the
highest possible probative value . . . [and] are facts established not
only beyond the need of evidence to prove them, but beyond the
power of evidence to controvert them.' A party cannot avoid the
consequences of the acts or omissions of his voluntarily selected
'lawyer-agent.'

Shuler v. Ingram & Assocs., 441 F. App'x 712, 718-19 (11th Cir. 2011) (quoting

Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962); Best Canvas Prods. &

Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983); Hill

v. Fed. Trade Comm'n, 124 F.2d 104, 106 (5th Cir. 1941)).[13]

---

[13] "An exception has been carved out of this general rule to permit the exercise of
the liberal pleading and joinder provisions of the Federal Rules of Civil Procedure
lest inconsistent pleadings under Rule 8(e)(2) be used as admissions negating each
other and lest the allegations in third party complaints and cross-claims seeking
recovery over in the event of liability in the principal action be used as admissions
establishing liability." Nichols v. Barwick, 792 F.2d 1520, 1523 (11th Cir. 1986)
(citing Cont'l Ins. Co. of New York v. Sherman, 439 F.2d 1294, 1298 (5th Cir.
1971)); see Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1178 n.17 (11th Cir.
2009). Under this exception, "the general rule binding a party by the admissions in
his pleadings [does] not apply when a party [takes] inconsistent positions . . . in
pleadings in a complicated joinder situation, involving . . . the contingent liability
of third parties." See Nichols, 792 F.2d at 1523 (internal quotation omitted); see
also Cont'l Ins. Co. of New York, 439 F.2d at 1298 ("[A]s a necessary exception to
the general rule, there is ample authority that one of two inconsistent pleas cannot
be used as evidence in the trial of the other."). Woodall has consistently asserted
that DIA was negligent, has not taken inconsistent positions, and the Court finds
the exception does not apply in this action. Even if the exception did apply and
Woodall's admissions could not be used to establish its vicarious liability, the
undisputed record evidence establishes that DIA was negligent in the roof repair
such that DIA's negligence, and Woodall's vicarious liability, is established.

The Court finds that Woodall's admissions establish that DIA violated the state minimum codes and Bartow County Building Code Ordinances, specifically the International Building and Plumbing Codes; that the roof work was negligently performed by DIA; and that DIA's negligence caused the roof to collapse.

> 5. *Whether Woodall is vicariously liable for DIA's negligence based on record evidence*

Under O.C.G.A. § 51-2-5, evidence of violations of building codes and harm caused by those violations is proof of negligence *per se* and can support a claim of vicarious liability against an employer for the actions of the independent contractors that it employs. See Wilson, 36 S.E.2d at 758 (quoting Cent. R.R. & Banking Co. v. Smith, 3 S.E. 397, 397 (Ga. 1887)) ("'[T]he omission of specific acts of diligence prescribed . . . by a valid ordinance, is negligence per se.'"); Hicks v. Walker, 585 S.E.2d 83, 86 (Ga. Ct. App. 2003); Parks-Nietzold v. J.C. Penney, 490 S.E.2d 133, 135 (Ga. Ct. App. 1997); see also Hudgins v. Bacon, 321 S.E.2d 359, 364 (Ga. Ct. App. 1984) ("It is well established that '[t]he law imposes upon persons performing architectural, engineering, and other professional and skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances . . ., is ordinarily employed by their respective professions.'").

Woodall does not dispute the record evidence that DIA failed to comply with applicable state minimum standard codes or the applicable Bartow County Code Ordinances in performing work on the roof and does not dispute that this failure caused the roof to collapse.  (PSMF ¶¶ 13-38).  Woodall has not offered evidence to rebut, or even suggested an error in reaching, the conclusion expressed by Plaintiffs' engineering expert that the repairs to the roof failed to comply with applicable state minimum standard codes, specifically the International Building and Plumbing Codes, and, as a result, caused the roof to collapse.  (Id. ¶¶ 31-38). The Court finds that the undisputed record evidence in this case is proof of negligence *per se*.

Based on the undisputed record evidence and Woodall's admissions, the Court finds Woodall had a nondelegable duty to ensure that the repair work on the Hobby Lobby roof complied with applicable state minimum standard codes and Bartow County Code Ordinances, Woodall employed DIA to perform that repair work on the roof, and DIA negligently performed the repair work by violating applicable state minimum standard codes and Bartow County Building Code Ordinances.  As a result, Woodall is vicariously liable for DIA's negligence.

The Court finds that there is no genuine dispute of fact on the issue of Woodall's vicariously liability for DIA's negligence pursuant to O.C.G.A. § 51-2-5(4), and partial summary judgment is granted.[14]

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Essex's Motion to Intervene for the Limited Purpose of Seeking a Stay Pending the Outcome of a Declaratory Judgment Action [20] is **GRANTED**.

**IT IS FURTHER ORDERED** that Essex's Motion for Stay and Injunction of this Action [19] and Woodall's Motion to Stay [22] are **DENIED**.

**IT IS FURTHER ORDERED** that Woodall's Motion to Deny or Defer Judgment on Plaintiffs' Motion for Partial Summary Judgment Pursuant to Rule 56(d) [39] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [25] is **GRANTED**.

---

[14] The Court notes that this determination does not affect Plaintiffs' or Woodall's claims against DIA because Plaintiffs and Woodall have not sought summary judgment on those claims.

**SO ORDERED** this 24th day of September, 2012.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE